KEVIN F. RUF (#136901)
  kevinruf@gmail.com
MARC L. GODINO (#182689)
  mgodino@glancylaw.com
GLANCY PRONGAY &
MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiff and the Proposed Class and Subclasses*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LILLIAN ELLIOT on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KEURIG DR PEPPER, INC.,<br><br>Defendant. | Case No:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>**1. CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE. §§ 1750**<br>**2. CALIFORNIA UNFAIR COMPETITION LAW, BUS. & PROF. CODE §§17200**<br>**3. CALIFORNIA FALSE ADVERTISING LAW, BUS. & PROF. CODE §§ 17500**<br>**4. MASSACHUSETTS CONSUMER PROTECTION LAW, MASS. GEN. LAWS CHAPTER 93A**<br>**5. BREACH OF EXPRESS WARRANTY**<br>**6. BREACH OF IMPLIED WARRANTY**<br>**7. NEGLIGENT MISREPRESENTATION**<br>**8. FRAUD BY OMISSION**<br>**9. FRAUD IN THE INDUCEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

# TABLE OF CONTENTS

I.    JURISDICTION AND VENUE ...................................................................1

II.   NATURE OF THE ACTION ....................................................................2

III.  PARTIES ...................................................................................................4

IV.   FACTUAL ALLEGATIONS ....................................................................5

   1. Federal and State Law Require All Food Products Sold to Consumers in the United States to Disclose if the Product is Artificially Flavored. ............................5

   2. The Products All Contain Artificial Flavoring. ...........................................7

   3. The Products are Misbranded and Unlawfully and Misleadingly Labeled. ...............8

   4. Plaintiff and the Class Were Injured by Defendant's Unlawful Practices.................13

   5. Defendant's Competitors Who Label Their Products Lawfully Are Also Damaged by Defendant's Unlawful Conduct. ..............................15

V.    DELAYED DISCOVERY AND ACCRUAL ........................................16

VI.   CLASS ACTION ALLEGATIONS ......................................................16

VII.  CAUSES OF ACTION ..........................................................................21

FIRST CAUSE OF ACTION: ......................................................................21

Violation of the Consumers Legal Remedies Act ("CLRA").......................21

SECOND CAUSE OF ACTION: ................................................................22

Violation of the Unfair Competition Law ("UCL"), Unlawful and Unfair Prongs..........22

THIRD CAUSE OF ACTION: ....................................................................25

Violation of False Advertising Law ("FAL") .............................................25

FOURTH CAUSE OF ACTION: ................................................................26

Violation of Massachusetts Consumer Protection Law ................................26

FIFTH CAUSE OF ACTION: .....................................................................29

Breach of Express Warranties ....................................................................29

(on behalf of the California Subclass and multi-state warranty Subclass).....................29

SIXTH CAUSE OF ACTION: .....................................................................30

Breach of Implied Warranties ....................................................................30

SEVENTH CAUSE OF ACTION: ..............................................................32

Negligent Misrepresentation .....................................................................32

i

EIGHTH CAUSE OF ACTION: ........................................................................**34**

Fraud by Omission ........................................................................................**34**

NINTH CAUSE OF ACTION: ..........................................................................**35**

Fraud in the Inducement...............................................................................**35**

VIII.   PRAYER FOR RELIEF ........................................................................**37**

IX.     JURY DEMAND ...................................................................................**38**

Plaintiff Lillian Elliot ("Plaintiff"), on behalf of herself and all others similarly situated, by and through undersigned counsel, hereby brings this action against Keurig Dr Pepper, Inc. ("Keurig" or "Defendant") and upon information and belief and investigation of counsel, alleges as follows:

## I.    **JURISDICTION AND VENUE**

1.    Plaintiff brings this proposed class action (the "Action") in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

2.    This Court has subject matter jurisdiction under CAFA, 28 U.S. Code § 1332(d), which provides federal courts with original jurisdiction over any class action in which any member of the plaintiff class is a citizen of a state different from any defendant and the matter in controversy exceeds $5 million in the aggregate, exclusive of interest and costs.

3.    Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as Plaintiff as well as other members of the proposed Class are citizens of states other than Delaware and Massachusetts and Defendant is a citizen of Delaware and Massachusetts.

4.    The jurisdictional amount in controversy is satisfied. Plaintiff alleges on information and belief that total claims of proposed Class members exceed $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

5.    This matter is not a "local controversy." *See*, 28 U.S.C. §1332(d)(5)(B). Plaintiff alleges on information and belief that more than two-thirds of the members of the proposed Class are citizens of states other than California and that the proposed Class contains more than 100 persons.

6.    This Court has both general and specific personal jurisdiction over the Defendant.

7.     This Court has personal jurisdiction over Defendant because Keurig has affirmatively established and maintained contacts with the State of California and is registered to do business in California.

8.     This Court further has specific personal jurisdiction arising from Defendant's decisions to market, distribute, and sell the products that are the subject of this action in California.

9.     Defendant has sufficient minimum contacts with this State and sufficiently avails itself of the markets and legal protections of this State through Defendant's promotion, marketing, sales, and distributing of the Products within the State to render the exercise of jurisdiction by this Court reasonable and fair.

10.     Venue is proper in this County and this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in this district and Plaintiff purchased the subject products of this action in this judicial district. Defendant conducts business and engages in substantial transactions here, and many of the transactions complained of herein occurred in this district including specifically the transactions between Plaintiff and Defendant.

## II.     <u>NATURE OF THE ACTION</u>

11.     This is a consumer class action for the violation of state consumer protection laws and statutes including unfair competition, false advertising, breach of warranty, negligent misrepresentation, fraud by omission, and fraudulent inducement.

12.     Defendant sells a variety of carbonated beverages described as "ginger ales" and "diet ginger ales" under both its Schweppes and Canada Dry brand names.

13.     Defendant's ginger ale beverages that are the subject of this action include but are not limited to products labeled, "Schweppes Diet Ginger Ale," "Schweppes Diet Raspberry Ginger Ale," "Schweppes Dry Grape Ginger Ale," "Schweppes Black Cherry Ginger Ale," "Canada Dry Diet Ginger Ale," "Canada Dry Zero Sugar Ginger Ale," "Canada Dry Zero Sugar Ginger Ale and Lemonade" and "Canada Dry Diet Cranberry Ginger Ale" (the "Products").

14.     Defendant manufactures, labels, markets, advertises, distributes and sells the Products through a variety of retail outlets across the United States.

15.     Defendant sells the Products in a variety of sizes and configurations including one-liter bottles, two-liter bottles, 10-ounce cans, and 12-ounce cans.

16.     Defendant labels all of the Products as if they were solely naturally flavored**.**

17.     The Products, however, all contain undisclosed artificial flavoring.

18.     Federal and state laws require that all food products that contain artificial flavors display prominent disclosures on the front-of-package labels and in the ingredient statement informing consumers that those products are artificially flavored.

19.     None of the Products disclose the presence of artificial flavors.

20.     All of the Products are unlawfully labeled.

21.     Several of the Products' labels, in fact, claim or claimed during the Class period that they were flavored only with "Natural ginger flavor" or "Natural flavors," or that they were "Naturally flavored" or "Naturally flavored with other natural flavors."

22.     All of these labels are and were false and misleading. The Products all contain undisclosed artificial flavors which must under federal and state law be disclosed to consumers.

23.     These labels are both intentionally misleading and unlawful under federal and state law because they omit the material fact that the Products contain artificial flavoring and the Products' characterizing flavor is simulated and reinforced by artificial flavoring.

24.     Defendant willfully conceals from consumers the fact that the Products contain artificial flavoring chemicals that simulate and reinforce the characterizing flavor.

25.     Because these labels conceal the fact that the Products are made with artificial flavors, those labels are false and misleading and the Products are misbranded under federal and state law.

CLASS ACTION COMPLAINT

26.     Defendant intended the packaging, labeling, and advertising scheme for the Products to give consumers the false impression that they are buying premium all-natural products instead of beverages that are artificially flavored.

27.     Plaintiff, who purchased the Products multiple times during the proposed Class Period and was deceived by Defendant's unlawful conduct, brings this action on her own behalf and on behalf of consumers in California and nationwide to remedy Defendant's unlawful conduct.

28.     On behalf of the Class as defined herein, Plaintiff seek an order compelling Defendant to, *inter alia*: (1) cease packaging, distributing, advertising, and selling the misbranded Products in violation of state consumer protection laws; (2) inform consumers regarding the Products' misbranding; (3) award Plaintiff and the other Class members restitution, actual damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

### III.   PARTIES

29.     Defendant Keurig Dr Pepper Inc., a food and beverage manufacturer and distributor, is incorporated in Delaware.

30.     Defendant states that its corporate headquarters is located in Massachusetts at 53 South Avenue, Burlington, MA 01803.

31.     Defendant is registered to do business in California as business entity number C2954422.

32.     Defendant advertises, markets, distributes, and sells Schweppes and Canada Dry brand ginger ales in California, in Massachusetts, and throughout the United States.

33.     Plaintiff Lillian Elliot is a resident and citizen of California and purchased one or more of the Products multiple times at her neighborhood Walmart store in Sacramento County, California, for personal and household consumption.

## IV.   FACTUAL ALLEGATIONS

**1. Federal and State Law Require All Food Products Sold to Consumers in the United States to Disclose if the Product is Artificially Flavored.**

34.    Defendant manufactures, markets and sells a variety of so-called "ginger ale" and "diet ginger ale" beverages under the "Schweppes" and "Canada Dry" brand names.

35.     Federal and state law require food and beverage manufacturers to disclose to consumers prominently on the front-of-package product labels and product ingredient lists if the product contains any artificial flavoring.

36.    Federal regulations at 21 C.F.R. 101.22(c) require all foods containing artificial flavoring to include a prominent statement of artificial flavoring to inform the purchaser and consumer that the product is artificially flavored.

37.    State consumer protection laws mirror the federal regulations or incorporate those regulations by reference.

38.    If a food or beverage product contains any artificial flavor that "simulates, resembles or reinforces" a characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

39.    Such statements must be in easily-readable print on the front display panel and of sufficient size for an average consumer to notice.

40.    An artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy Product, or fermentation Product thereof." 21 CFR 101.22(a)(1).

41.    These federal regulations are incorporated verbatim or by reference in multiple state consumer protection laws including specifically California's Food, Drug, and Cosmetic Law. (Health & Saf. Code, § 109875 et seq. ("Sherman Law")).

42.    Product labeling that violates these FDA regulations by definition also violates California's Sherman Law.

43.    Other state laws either incorporate these regulations and definitions by

reference or apply legally identical regulations.

44.   U.S. Food, Drug, and Cosmetic Act regulations also require that a food's label accurately describe the food product, its characterizing flavors, and all ingredients. *See*, 21 C.F.R. 102.5(a).

45.   Under federal regulations, any recognizable primary flavor identified on the front label of a food product is referred to as a "characterizing flavor."

46.   Federal regulations state that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". *See* 21 C.F.R. 101.22(i).

47.   "Ginger," which describes the Products' flavor and is displayed on the Products' front-labels, is a primary recognizable flavor and is therefore the Products' characterizing flavor.

48.   If a food product's characterizing flavor is not created exclusively by the named ingredient, the product's front label must state that the product contains either natural flavorings or artificial flavorings or both as appropriate.

49.   Under federal regulations and state consumer protection laws, the product ingredient lists are also required to inform the consumer that the product contains artificial flavorings.

50.   None of the Product labels or Product ingredient lists inform consumers that the Products contain artificial flavoring. Defendant conceals from consumers that all the Products are artificially flavored.

51.   California law also prohibits entities from making untrue or misleading statements about goods, engaging in unethical practices injurious to California residents or competing corporations and other entities, and from violating FDA and other federal regulations and the laws of other states regarding consumer protections.

52.   Massachusetts law further protects consumers by prohibiting persons from using unfair or deceptive acts or practices in the conduct of trade or commerce and from

concealing, suppressing, or omitting material facts from consumers.

53.     Other states' laws are similar; all prohibit and make unlawful the sale of food products that contain artificial flavors unless the artificial flavoring is prominently disclosed on product labels.

**2. The Products All Contain Artificial Flavoring.**

54.     The Products all contain artificial flavoring.

55.     All of the Products contain an ingredient identified in the product ingredient lists as "malic acid."

56.     The "malic acid" Defendant adds to the Products is actually a synthetic compound called dl-malic acid, a racemic mixture of d- and l-malic acids.

57.     Other chemical names for d-malic acid are d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

58.     This compound, informally known as d-malic acid, is not found in nature.

59.     A commercial food industry testing lab confirmed through quantitative analytical testing that the Products contained added dl-malic acid.

60.     The different Products include different quantities of dl-malic acid.

61.     For the Schweppes branded Products, malic acid (dl-malic acid) is the second ingredient by weight after carbonated water.

62.     The Canada Dry branded Products contain lesser quantities of dl-malic acid.

63.     The dl-malic acid that Defendant adds to the Products is a synthetic petrochemical that is made from benzene or butane in petrochemical factories.

64.     Natural malic acid is a primary flavor component of natural ginger.[1] [2] [3]

---

[1] "Composition and Properties of Fresh Ginger (Zingiber officinale) Rhizome" by S. S. Raghavan and R. K. Rana, published in the Journal of Food Science in 1981.

[2] "Ginger: Chemistry, Technology, and Quality Evaluation" by D. L. McKenna, published in the Critical Reviews in Food Science and Nutrition in 1994.

[3] "Effect of Processing on Malic Acid, Gingerol and Zingiberene Contents in Ginger (Zingiber officinale Roscoe)" by H. Tang et al., published in the Journal of Food Composition and Analysis in 2009.

65.     Defendant adds synthetic dl-malic acid to the Products because without the addition of this synthetic chemical the Products would not taste like "ginger ale."

66.     The dl-malic acid in the Products simulates, resembles, and reinforces the Products' characterizing flavor.

67.     The synthetic dl-malic acid added to the Products functions as a flavoring in the Products.

68.     The dl-malic acid in the Products is not a natural flavoring material, it is a synthetic chemical manufactured in a petrochemical factory from petroleum feedstocks.

69.     The dl-malic acid Defendant adds to the Products is therefore an artificial flavor under federal and state law.

**3. The Products are Misbranded and Unlawfully and Misleadingly Labeled.**

70.      None of the Products' packaging includes on either the front or back labels any indication that the Products contain artificial flavoring.

71.     Many of the Products' labels expressly represent or represented during the proposed Class period that they were made only with "Natural Flavors" or "Natural Ginger Flavor," or were "Naturally flavored" or "Naturally flavored with other natural flavors."

72.     None of the Canada Dry- or Schweppes-branded Products lawfully disclose to the consumer that they are artificially flavored.

73.     Below (overleaf) is a true and accurate representation of an example of a Canada Dry diet Ginger Ale product front label and packaging during the Class period.



74.     These Canada Dry Product labels fail to inform consumers that the Product is flavored with an artificial flavor.

75.     Representative front and back label images for a two-liter bottle of the Canada Dry Zero Sugar Ginger Ale product are shown below:

 

76.     Neither the front nor back labels show the required artificial-flavoring disclosures.

77.     The Product ingredient lists also fails to identify the "malic acid" in the

CLASS ACTION COMPLAINT

Product as an artificial flavor as required by Federal and state law.

78.    The Schweppes-branded Products similarly violate federal and state consumer protection laws.

79.    The labels on "Schweppes Diet Ginger Ale" Products, for example, in addition to unlawfully failing to disclose to consumers that they are artificially flavored, further misleading consumers with label statements that those Products are made with, for example, "Natural Ginger Flavor" with "other natural flavors."

80.    Below is a true and accurate representation of Schweppes Diet Ginger Ale products and labels.



81.    These label representations also convey to the consumer by operation of federal and state law that the Products are flavored only with natural flavors.

82.    All of the Products' labeling omits the federal and state-required "Artificial Flavor" or "Artificially Flavored" front-label statement.

83.    Because the Products contain added artificial flavoring that simulates and reinforces the Products' characterizing ginger flavor, the Products' front labels are required by law to disclose the presence of those additional flavorings rather than misleadingly and deceptively to suggest that the Products' flavor is conferred only by

natural flavorings.

84.    All are misleadingly labeled and warrant to the consumer that they contain only natural flavors and are not artificially flavored.

85.    Below are representative front labels and ingredients lists for two other of the Products:  Schweppes "Diet Ginger Ale" and Schweppes "Diet Raspberry Ginger Ale."[4]





86.    For both these Products, malic acid – actually artificial dl-malic acid - is the first ingredient by weight after carbonated water.

87.    None of these Products' front or back labels include the required artificial-

---

[4] See https://www.schweppesus.com/products/ginger-ale, last visited April 23, 2024.

flavoring disclosures informing the consumer that the product contains artificial flavoring.

88.   Defendant intentionally omits this legally-required labeling, choosing instead to intentionally label the Products as if they are solely naturally flavored.

89.   Defendant intentionally conceals from consumers the presence of artificial flavoring in the Products.

90.   Defendant unlawfully misleads consumers to believe that the Products are naturally flavored when in fact they all contain artificial flavoring.

91.   Food and beverage ingredient suppliers offer both the natural and artificial versions of malic acid.

92.   Defendant chose to use the artificial version, dl-malic acid, because it is less expensive than using natural flavors, but falsely and unlawfully labels the Products as if they contain only natural flavors.

93.   Defendant, a sophisticated beverage manufacturer, made a conscious choice to use the artificial version of the flavoring material but not label the Products in accordance with federal and state law requirements.

94.   Defendant knew or should have known that the Products are unlawfully mislabeled and misbranded. Defendant willfully conceals from consumers, through the Products' mislabeling and misleading advertising, the fact that the Products are artificially flavored.

95.   Defendant deceives consumers and violates federal regulations and the state laws of California, Massachusetts, and other states.

96.   Other states' laws similarly require that food product labels must disclose the presence of artificial flavoring and be accurate and not misleading.

97.   The Products are misbranded and illegal to distribute or sell in commerce in California, Massachusetts, or anywhere in the U.S.

CLASS ACTION COMPLAINT

## 4. Plaintiff and the Class Were Injured by Defendant's Unlawful Practices.

98.    Plaintiff and Class members suffered an ascertainable loss of money as a result of Defendant's conduct because they purchased the Products containing undisclosed and undesirable artificial flavors and purchased those Products at a price premium.

99.    When purchasing the Products, Plaintiff and class members were seeking products of particular qualities, characteristics, and benefits, specifically products that were flavored only with the natural ingredients claimed on the labels and that did not contain artificial flavors.

100.    Plaintiff is not alone in these consumer preferences. Forbes Magazine reported that 88% of consumers polled indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers— say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

101.    Defendant's misleading labeling and marketing of the Products reflects this knowledge of consumers' preferences for natural products.

102.    Plaintiff purchased one or more of the Products in California during the Class Period as defined herein.

103.    Plaintiff was unaware that the Products contained artificial flavors when they purchased them.

104.    Plaintiff purchased the Products at marked retail prices in various sized bottles and cans and multi-packs, and from time to time at promotional prices.

105.    Plaintiff and the Class relied upon and were deceived by the Products' deceptive labeling, and specifically Defendant's omission of the fact that the Products

---

[5] "Consumers Want Healthy Foods--And Will Pay More For Them"; https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; last visited May 24, 2024.

CLASS ACTION COMPLAINT

contained artificial flavorings and decision to label the Products as if they were solely naturally flavored.

106. Plaintiff purchased the Products believing they were naturally flavored, based on the Products' deceptive labeling and Defendant's failure to disclose the artificially flavoring.

107. Plaintiff first discovered Defendant's unlawful conduct described herein in 2024, when she learned that the Products' characterizing flavor was deceptively simulated using artificial flavors.

108. Plaintiff and the Class, as reasonable consumers, are not required to subject consumer food and beverage products to laboratory analysis or to independently research label information that state law and federal regulations require be accurately disclosed and prominently displayed on product labeling.

109. Defendant, but not Plaintiff or the Class, knew or should have known that the Products' labeling was unlawful, false, and misleading.

110. Plaintiff and Class members would not have purchased the Products were they not fraudulently induced to do so by the Products' unlawful and misleading labels.

111. Because Plaintiff and the Class reasonably assumed the Products to be free of artificial flavoring based on the Products' labels, when they were not, they did not receive the full benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, Plaintiff and the Class purchased Products that were unlawfully labeled to deceive consumers into believing that they were exclusively naturally flavored and contained no artificial flavoring.

112. Products that consumers believe to be naturally flavored compete with and sell at a price premium compared to products that contain artificial flavors.

113. Plaintiff and the Class would not have purchased the Products in the absence of Defendant's misrepresentations and omissions. Had Defendant not violated state and federal law, Plaintiff and the Class would not have been injured.

114.   Alternatively, Plaintiff and the Class members would not have paid as much for the Products absent Defendant's false and misleading statements and omissions.

115.   The Products were worth less to Plaintiff and other Class members than they paid for them.

116.   Defendant's deceptive labeling practices and knowing and willful omissions of material facts caused Plaintiff and the Class to lose money. Plaintiff, and each Class member, altered their financial positions to their detriment and suffered losses equal to the price of the Products they purchased or the price premium they paid believing the products contained no artificial flavors.

117.   Plaintiff intends to, desires to, and will purchase the Products again when she can do so with the assurance that the Products' labels, which warrant that the Products are solely naturally flavored, are lawful and consistent with the Products' ingredients.

118.   Plaintiff might purchase the misbranded and unlawfully labeled Products again in the future, as she may forget or may reasonably but incorrectly assume the false labeling was corrected.

119.   Because human memory is imperfect, Plaintiff and class members may mistakenly purchase the misbranded Products again, without realizing that those Products are still misbranded and still deceptively packaged and labeled.

### 5. Defendant's Competitors Label Their Products Lawfully and Are Also Damaged by Defendant's Unlawful Conduct.

120.   Defendant not only deceives consumers but also gains an unfair commercial advantage in the marketplace by deceptively labeling the Products.

121.   Manufacturers of competing beverage products label their products lawfully.

122.   Other manufacturers of artificially flavored beverages, for example, accurately and lawfully label their products as "Artificially Flavored."

123.   Other competing manufacturers, offering products whose labels suggest as Defendant does that their products are naturally flavored, truly make their products only with natural flavorings.

124. Defendant, however, conceals the use of artificial flavoring, thus deceiving consumers, increasing sales, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace.

125. Defendant's marketing of the Products injures competing manufacturers that do not engage in the same illegal behavior.

126. Those manufacturers compete with Defendant for shelf-space and market share. Defendant's competitors do so lawfully; Defendant does not.

## V.   DELAYED DISCOVERY AND ACCRUAL

127. Plaintiff did not discover that Defendant's labeling of the Products was false and misleading until 2024 when she learned the Products contained undisclosed artificial flavoring.

128. Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in the purchase of the Products. Nevertheless, she would not have been able to discover Defendant's deceptive practices and lacked the means to discover them given that, like nearly all consumers, she relies on and is entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law.

129. Defendant's labeling practices and non-disclosures in failing to disclose that the Products contained artificial flavoring and unlawfully labeling the Products as if they were solely "naturally flavored" unfairly impeded Plaintiff's and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

130. Because Defendant actively concealed the illegal conduct, preventing Plaintiff and the Class from discovering the violations of state law and federal regulations, Plaintiff and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI.   CLASS ACTION ALLEGATIONS

131. Plaintiff brings this action on behalf of herself and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

16

132.   The Class is defined as follows:

All U.S. citizens who purchased the Products in the United States on or after November 1, 2018 and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

133.   The Plaintiff also intends to represent a proposed California Subclass.

134.   The proposed California Subclass is defined as follows:

All California residents who purchased the Products in California on or after November 1, 2018 and until the date the Subclass is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

135.   Plaintiff also intends to represent a proposed multi-state breach of warranty Subclass and a proposed breach of contract, fraud by omission, and fraud in the inducement Subclass.

136.   Such Subclasses are consistent with U.S. Supreme Court jurisprudence and have previously been certified by federal district courts.

137.   The multi-state express- and implied-warranty class is defined, as per prior Eastern District of California class certification authority, as:

All residents of California, Delaware, District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, or West Virginia, who purchased the Products as defined herein in one of those states on or after November 01, 2018, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

138.   The multi-state breach of contract, fraud by omission and fraud in the inducement Subclass is defined, per prior California federal court class certification authority, as:

All residents of  California, Alabama, Alaska, Colorado, Connecticut,

17

Florida, Illinois, Indiana, Iowa, Kansas, Louisiana, Massachusetts, Missouri, New Jersey, New York, North Dakota, Oregon, Texas, Utah, or West Virginia, who purchased the Products as defined herein in one of those states on or after November 01, 2018, and until the date the Class is certified by the Court, excluding Defendant and Defendant's officers, directors, employees, agents, and affiliates, and the Court and its staff.

139. During the Class Period, the Products all contained the undisclosed artificial flavor dl-malic acid and were otherwise improperly labeled under state statutory and common-law consumer protection laws.

140. During the Class Period, Class members purchased the Products and incurred the same injuries as alleged herein for the Plaintiff.

141. The proposed Class meets all criteria for a class action, including numerosity, commonality, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

142. The proposed Class satisfies numerosity. Defendant distributes the Products through thousands of retail grocery stores across the United States and extensively through e-commerce; the Class numbers at least in the tens of thousands of consumers. Individual joinder of the Class members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

143. The proposed Class satisfies commonality. Multiple questions of fact and law common to the Class will determine Defendant's liability to Class members and common answers to these questions will drive the resolution of this litigation.

144. The proposed Class satisfies typicality. Plaintiff's claims are typical of and are not antagonistic to the claims of other Class members. Plaintiff and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

145. The proposed Class satisfies superiority. Common questions of law and fact predominate over any individual issues, and class action is superior to any other means for

18

adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase price which is generally under $2.00 per individual can or $6.00 for a six-pack of 10-ounce bottles.

146.  It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers, unfairly compete with other companies, and violate federal and state law with impunity.

147.  Because Defendant made misrepresentations on the labels of the Products themselves, all Class members including Plaintiff were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

148.  The proposed Class representative satisfies adequacy of representation. The Plaintiff is an adequate representative of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiff has retained counsel competent in the prosecution of consumer fraud and class action litigation.

149.  There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

150.  Questions of law and fact common to Plaintiff and the Class include:

    a.    Whether Defendant failed to disclose the presence of an artificial flavoring ingredient in the Products;

    b.    Whether Defendant violated U.S. Food and Drug Administration labeling regulations and corresponding state law;

    c.    Whether Defendant's labeling omissions and representations constituted false advertising under state and federal law;

    d.    Whether Defendant violated California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750, *et seq*.

    e.    Whether Defendant violated California's Unfair Competition Law,

1         Cal. Bus. & Prof. Code §§17200, *et seq.*

2     f.    Whether Defendant violated California's False Advertising law, Cal.

3         Bus. & Prof. Code §§ 17500, *et seq.*

4     g.    Whether Defendant violated Massachusetts Consumer Protection

5         Law, Mass. Gen. Law Chapter 93A, and whether double or treble

6         damages are warranted;

7     h.    Whether Defendant violated consumer protection statutes of

8         other states;

9     i.    Whether Defendant violated state common-law consumer

10        protection and unfair competition statutes;

11     j.    Whether Defendant's advertising and label statements describing

12        solely natural flavoring were an affirmative representation of the

13        Products' composition creating an express warranty;

14     k.    Whether Defendant's conduct constitutes breaches of implied

15        warranties under state statutes and common law;

16     l.    Whether Defendant's conduct constitutes negligent

17        misrepresentation;

18     m.   Whether Defendant's conduct constitutes fraud by omission;

19     n.    Whether Defendant's conduct constitutes fraud in the

20        inducement;

21     o.    Whether the statute of limitations should be tolled on behalf of

22        the Class due to Defendant's deceptive conduct in knowingly

23        concealing the presence of artificial flavoring ingredients in the

24        Products;

25     p.    Whether Plaintiff and the Class are entitled to restitution,

26        rescission, actual damages, punitive damages, attorneys' fees

27        and costs of suit, and injunctive relief; and

28     q.    Whether Plaintiff and the Class are entitled to any such further

CLASS ACTION COMPLAINT

relief as the Court deems appropriate.

151.   Class members lost money as a result of Defendant's unlawful behavior.

152.   Class members altered their financial positions to their detriment and suffered ascertainable individual losses in an amount equal to the price or the price premium they paid for the Products as falsely labeled and advertised.

153.   Further, Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

154.   Class treatment is therefore appropriate for this Action.

## VII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION:

### Violation of the Consumers Legal Remedies Act ("CLRA")

Cal. Civ. Code §§ 1750, *et seq*. (on behalf of the California Subclass)

155.   Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

156.   The CLRA prohibits unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

157.   The Products are goods as defined by Cal. Civ. Code §1761.

158.   Plaintiff and the California Subclass members are consumers as defined by Cal. Civ. Code §1761(d).

159.   Defendant's failure to label the Products in accordance with federal regulations and state labeling laws and its omission and concealment of the material fact that the Products contain artificial flavoring constitute unfair, deceptive, unlawful, and unconscionable commercial practices or acts.

160.   Defendant's conduct violates the Consumer Legal Remedies Act.

161.   As a result of Defendant's violations, Plaintiff and the Class suffered ascertainable losses in the form of the prices or price premiums they paid for the unlawfully labeled and marketed Products, which they would not have paid had Defendant labeled the Products in accordance with federal regulations and California law, and in the

21

form of the reduced value of the Products purchased compared to the Products as labeled, advertised, and warranted.

162.   On or about June 19, 2024, Plaintiff sent a notice letter to Defendant which complies with California Civil Code § 1782 (a). Plaintiff sent to Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail demanding that Defendant rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and giving notice to all affected customers of their intent to do so.

163.    Defendant did not comply with the notice letter within thirty (30) days.

164.   Plaintiff and the proposed Class in this Complaint therefore seek both injunctive relief and damages under § 1770 and § 1782.

**SECOND CAUSE OF ACTION**:

**Violation of the Unfair Competition Law ("UCL"), Unlawful and Unfair Prongs**

Cal. Bus. & Prof. Code §§ 17200*, et seq.* (on behalf of the California Subclass)

165.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

166.   The UCL prohibits "unlawful," "unfair" or "fraudulent" business practices. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

167.   Under the UCL, conduct that violates other federal and state laws and statutes but which occurs in California also constitutes a violation of California law.

168.   Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

169.   Among other violations, Defendant's conduct in unlawfully distributing and selling the Products in California violated U.S. FDA packaging and labeling regulations.

170.   The Products contain artificial dl-malic acid as a flavoring.

171.   The dl-malic acid is an artificial flavoring material, and is included in the Products to create, simulate, and reinforce the Products' characterizing ginger flavor.

172.   The dl-malic acid in the Products is not derived from any natural material as

22

defined in 21 CFR § 101.22 and is therefore by law an artificial flavor.

173.    The Products' front labels fail to disclose that the Products contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law and are therefore misbranded.

174.    Defendant failed to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law, and distributed the Products in California and interstate commerce.

175.    Defendant therefore violated Section 17200, *et seq.*, of the California Civil Code.

176.    Pursuant to California Business & Professions Code §17203, Plaintiff seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return the full amount of money improperly collected to all those who purchased the Products.

177.    Defendant's practices also violate the Unfair Competition Law "unfair" prong in addition to the "unlawful" prong.

178.    Defendant's practices as described herein are "unfair" within the meaning of the California UCL because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

179.    Defendant's distribution of misbranded Products in violation of federal and state law may have some utility to Defendant in that it allowed Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored beverage at the retail price or would not purchase the Product at all if it were labeled correctly, and to realize higher profit margins than if the Products were either formulated or labeled lawfully, but this utility is small and is far outweighed by the gravity of the harm Defendant inflicted upon California consumers.

180.    Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False

CLASS ACTION COMPLAINT

Advertising Law, and the FDA regulations cited herein.

181. Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

182. Defendant consciously failed to disclose material facts to Plaintiff and the California Subclass in Defendant's advertising and marketing of the Products.

183. Defendant's conduct is unconscionable because in addition to an egregious breach of consumer trust, Defendant willfully violated 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include a "statement of artificial flavoring . . . likely to be read by the ordinary person under customary conditions of purchase and use of such food."

184. Defendant's conduct is "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products distributed in commerce in the U.S. for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

185. Plaintiff's and California Subclass members' purchases of the Products took place in California.

186. Defendant intended that Plaintiff and the Subclass rely on its acts or omissions so that Plaintiff and the other Subclass members would purchase the Products despite the fact they contain undisclosed artificial flavoring.

187. Had Defendant disclosed all material information regarding the Products in their advertising and marketing, Plaintiff and the Subclass would not have purchased the Products or would only have been willing to pay less for the Products than they did.

188. Plaintiff and the California Subclass suffered injury in fact and lost money or property as a result of Defendant's deceptive advertising: they were denied the benefit of the bargain when they purchased the Products based on Defendant's violation of the applicable laws and regulations and purchased the Products rather than competitors' products which are lawfully labeled and contain no artificial flavoring.

189. Plaintiff and the Subclass suffered an ascertainable loss of money.

24

Defendant's acts, omissions and practices detailed herein proximately caused Plaintiff and other members of the Subclass to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

190.   Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant violated this section of California Business & Professions Code § 17200 with its deceptive advertising.

191.   Defendant's conduct also injures competing producers, distributors, and sellers of beverages who do not engage in the same unfair and unethical behavior.

192.   Pursuant to California Business & Professions Code §17203, Plaintiff seeks an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to return the full amount of money improperly collected from the California Subclass.

## THIRD CAUSE OF ACTION:

### Violation of False Advertising Law ("FAL")

Cal. Bus. & Prof. Code §§ 17500, *et seq*. (on behalf of the California Subclass)

193.   Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

194.    Defendant distributed, in California and in interstate commerce, Products whose labels expressly represent that they are "Ginger Ale" and are flavored with, for example, "Natural Ginger Flavor with Other Natural Flavors," but fail to disclose that they are artificially flavored even though they contain artificial dl-malic acid, a flavoring agent.

195.   Defendant distributed, in California and in interstate commerce, Products that failed to disclose the presence of artificial flavoring on their packaging and labels as required by federal and state food labeling regulations.

196.   The Products' labeling and advertising falsely represent the Products as if they are solely naturally flavored.

197.   Under California's False Advertising Law, Business and Professions Code §17500 *et seq,*

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . .  any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §17500.

198.   Defendant's labeling and advertising statements conceal from consumers the material fact that the Products contain an artificial flavor, and Defendant, at a minimum by the exercise of reasonable care, should have known that the labeling was false and misleading.

199.   Defendant profited from this false and deceptive advertising to the detriment of consumers and its competitors.

200.   Defendant's conduct, therefore, violates California's False Advertising Law.

201.   Plaintiff, the Class, and the California Subclass are therefore entitled to the return of money collected from all those who were exposed to the above-described false advertising and who purchased the Products when they otherwise would not have or who paid a price premium for the falsely advertised Products.

## FOURTH CAUSE OF ACTION:

### Violation of Massachusetts Consumer Protection Law

Massachusetts General Law Chapter 93A ("MGL 93A")

202.   Plaintiff realleges and incorporates by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

203.   Defendant's deceptive and unfair conduct also violated the Massachusetts Consumer Protection Law, Massachusetts General Law Chapter 93A ("MGL 93A").

204.   Section 2 of MGL 93A declares unlawful unfair methods of competition and unfair or deceptive acts or practices by any person in the conduct of trade or commerce.

205.   Plaintiff, members of the Class, and Defendant are "persons" within the meaning of MGL 93A.

206.   Defendant engages in "trade" and "commerce" within the meaning of MGL 93A by advertising, distributing, offering for sale, and selling the Products.

207.   The Products constitute tangible property within the meaning of MGL 93A.

208.   Plaintiff and the Class are consumers and purchased the Products for personal, family, or household purposes.

209.   Defendant's manufacture, packaging, labeling, advertising, distribution and selling of the Products in Massachusetts and elsewhere directly affected the people of Massachusetts.

210.   Massachusetts consumer law expressly rejects a presumption against extraterritoriality.

211.   Many of the decisions, acts, and practices which resulted in injury to Plaintiff and to the Class occurred at and emanated from Defendant's corporate headquarters in Massachusetts.

212.   Massachusetts consumer protection law therefore applies to Defendant's conduct affecting the Plaintiff and Class members in other states.

213.   Defendant engaged in unfair or deceptive acts or practices in trade and commerce by failing to label the Products lawfully and concealing from Plaintiff and the Class that the Products contain artificial flavoring and the Products' characterizing flavors were simulated and reinforced with artificial flavor.

214.   Defendant deceptively and unfairly represented that the Products contained only natural flavors when in fact they contained artificial flavoring.

215.   Defendant falsely advertised the Products by concealing, suppressing, or omitting the material fact that the Products contained artificial flavoring and intended that consumers would rely upon this concealment, suppression, or omission when deciding whether to purchase and how much to pay for the Products.

216.   As a sophisticated actor in the beverage industry, Defendant knew or through the exercise of due care should have known they were engaging in unfair and deceptive acts or practices.

217.   Defendant knowingly and willfully represented the Products as possessing ingredients, characteristics, benefits, or qualities that they did not have. Defendant knew the Products contained undisclosed artificial flavoring. Defendant is liable for up to treble the actual damages that Plaintiff and Class members suffered pursuant to Section 9 of the MGL Ch. 93A.

218.   Plaintiff and the Class suffered ascertainable loss of money when they purchased the Products because they would not have bought or would have paid less money for the Products but for Defendant's deceptive and unfair acts and practices.

219.   Plaintiff and the Class did not get the benefit of the bargain with Defendant when purchasing the Products.

220.   Plaintiff and the Class suffered loss of money proximately caused by their reasonable reliance on Defendant's employment of false, deceptive, or unfair advertising, marketing, and labeling of the Products and their packaging.

221.   Plaintiff and the Class were injured because they purchased products based on false advertising or paid more to Defendant than the Products were worth.

222.   Defendant's deceptive acts also constitute unfair methods of competition because Defendant's competitors do not mislabel their beverages, omit or conceal material facts about the ingredients they put into their beverages, and otherwise do not use unfair or deceptive practices to compete in the marketplace.

223.   As required by MGL 93A, Plaintiff sent Defendant a written demand for relief on or about June 19, 2024 that identified Plaintiff and their contact information,

described the unfair or deceptive acts and practices upon which Plaintiff relied, detailed the injuries that Plaintiff suffered as a proximate result of Defendant's unfair and deceptive acts and practices, and included a request for relief.

224. Defendant did not respond to Plaintiff's demand letter with any proposed remedial actions within thirty days of its transmission nor otherwise communicate any settlement offer to Plaintiff.

## FIFTH CAUSE OF ACTION:
## Breach of Express Warranties

Cal. Comm. Code § 2313 & similar state laws including those of Delaware, District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia

(on behalf of the California Subclass and multi-state warranty Subclass)

225. Plaintiff realleges and incorporates by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

226. The Products' front labels misleadingly claim, by operation of California law and legally-identical laws of multiple other states, that the Products are flavored solely with natural flavor.

227. Product labels expressly state that the Product is a "Ginger Ale" or represent that they are made with "Natural Flavors," "Natural Ginger Flavor," or "Natural Flavor with Other Natural Flavors."

228. These labels, by operation of Federal and state law, guarantee that a product so labeled contains no artificial flavors and is flavored exclusively with natural flavoring ingredients.

229. The Products' front labels intentionally fail to disclose the use of artificial flavoring, in violation of federal and state law. *See, e.g.,* 21 C.F.R. 101.22(i)(3).

230. Such disclosures are mandatory under federal and state law.

231. Defendant's intentional choice to label the Products as if they contained only natural flavors warranties to consumers that the Products contain no artificial flavors.

232. Defendant's affirmations of fact, promises, and warranties that the Products

29

contained only natural flavors became part of the basis of the bargain between the parties and thus constituted express warranties.

233.   The Products did not conform to Defendant's affirmations of fact, promises, and warranties because they contain artificial flavors.

234.   Defendant breached its express warranties that the Products contained only natural flavors.

235.   Defendant sold the goods to Plaintiff, the California Subclass, and other U.S. consumers who bought the goods from Defendant.

236.   As a result, Plaintiff, the California Subclass, the multi-state warranty class, and other U.S. consumers did not receive goods as warranted by Defendant.

237.   Within a reasonable amount of time after Plaintiff discovered that the Products contained artificial flavoring, Plaintiff notified Defendant of the breach of warranties.

238.   As a proximate result of this breach of express warranties, Defendant damaged Plaintiff, the California Subclass, and other U.S. consumers in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION:
### **Breach of Implied Warranties**

Cal. Comm. Code § 2314 & similar state laws including those of Delaware, District of Columbia, Kansas, Missouri, New Jersey, Ohio, Utah, Virginia, and West Virginia

(on behalf of the California Subclass and multi-state warranty Subclass)

239.   Plaintiff realleges and incorporates all of the allegations elsewhere in the complaint as if set forth in full herein.

240.   Defendant's label representations also create implied warranties that the Products are suitable for a particular purpose, specifically as naturally-flavored beverages containing no artificial flavors. Defendant breached these warranties as well.

241.   Because the Products do not display any "Artificially Flavored" disclosure as required by law, and all claim to be "Ginger Ale," and some of the Products variously

30

claim to be made with "Natural Flavors," "Natural Ginger Flavor," or "Natural Flavor with Other Natural Flavors," the Products' front labels falsely guarantee that the Products contain no artificial flavoring ingredients and are flavored solely with natural flavors.

242.  At the time of purchase Defendant had reason to know that Plaintiff as well as all members of the California Subclass and other U.S. consumers sought to buy naturally-flavored beverage products, lawfully labeled and free of artificial flavoring.

243.  This became part of the basis of the bargain between the parties.

244.  Based on that implied warranty, Plaintiff and Class and Subclass members bought the Products from Defendant.

245.  At the time of purchase, Defendant knew or had reason to know that Plaintiff, Subclass members, and other U.S. consumers were relying on Defendant's skill and judgment to select or furnish products that were suitable for this particular purpose, and justifiably relied on Defendant's skill and judgment.

246.  The Products were not suitable for this purpose.

247.  Plaintiff, Subclass members, and other U.S. consumers purchased the Products reasonably believing they had the qualities they sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory for the intended uses for the reasons described herein.

248.  In addition, Defendant breached the implied warranty of merchantability because the Products were not merchantable in California since they were not of the same quality as other products in the category generally acceptable in the trade.

249.  The Products would not pass without objection in the trade when packaged with their existing labels because the Products were misbranded and illegal to sell in California. *See* Cal. Comm. Code 2314(2)(a).

250.  The Products also are not acceptable commercially and Defendant breached their implied warranty because the Products are inadequately packaged and labeled. Cal. Comm. Code 2314(2)(e).

251.  The Products also were not acceptable commercially and breached their

implied warranty because they did not conform to the promises or affirmations of fact made on the containers or labels, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

252.   Defendant breached the implied warranty of merchantability.

253.   By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to sell in California.

254.   Because the Products were misbranded and were therefore illegal to sell or offer for sale in California, Defendant breached this warranty as well.

255.   Defendant's conduct violated all similar state warranty laws in states other than California.

256.   As a result of this breach, Plaintiff, Subclass members, and other U.S. consumers did not receive goods as impliedly warranted by Defendant.

257.   After the Plaintiff discovered that the Products contained artificial flavoring, Plaintiff notified Defendant of such breach.

258.   As a proximate result of Defendant's breach of warranty, Plaintiff and other California and other states' consumers have been damaged in an amount to be determined at trial.

259.   As a result, Plaintiff, Subclass members, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## SEVENTH CAUSE OF ACTION:

### Negligent Misrepresentation

Cal. Civ. Code §§ 1709-1710 and the common law of all states

(on behalf of the Nationwide Class and the California Subclass)

260.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

261.   Defendant had a duty under California, Massachusetts, federal law and state

32

common law to disclose to Plaintiff, Subclass members, and other U.S. consumers that the Products contained artificial flavoring.

262. Defendant was in a superior position regarding both this information and its expertise such that reliance by Plaintiff, the Subclass, and other U.S. consumers was justified. Defendant possessed the skill and expertise to know the type of information that would influence a consumer's purchasing decision and that the Products contained artificial flavoring.

263. Defendant made express statements that convey by operation of law that some or all Products were made solely with natural flavors despite knowing or not having a reasonable belief that these representations were true.

264. During the Class Period, Defendant also negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, specifically the use of and presence of artificial flavoring in the Products.

265. Defendant was negligent in distributing the Products labeled as if they were exclusively naturally flavored and in failing to identify the Products as artificially flavored.

266. Defendant intended for Plaintiff, Subclass members, and other U.S. consumers to rely on these representations.

267. Defendant's representations were not true.

268. Defendant's Products are not exclusively naturally flavored but in fact contain artificial flavor.

269. Defendant failed to secure a reasonable factual basis for believing that the Products were solely naturally flavored at any time relevant to this action.

270. Defendant was careless in ascertaining the truth of its representations in that Defendant knew or should have known that Plaintiff, Subclass members, and other U.S. consumers would not discover the use of artificial flavoring ingredients in the Products.

271. Plaintiff, Subclass members, and other U.S. consumers reasonably relied on this representation. They were unaware of Defendant's misrepresentations and omissions

and, as a result, justifiably relied on them when making the decision to purchase the Products.

272. Defendant thereby harmed Plaintiff, Subclass members, and other U.S. consumers as alleged herein. Plaintiff, the Subclass, and other U.S. consumers would not have purchased the Products, or would have paid less for the Products, if they had known the Products contained artificial flavor.

273. Plaintiff's, Subclass members', and other U.S. consumers' reliance on Defendant's misrepresentations was a substantial factor in that harm.

274. As a result, Plaintiff, Subclass members, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of funds by which Defendant was unjustly enriched.

## EIGHTH CAUSE OF ACTION:

### Fraud by Omission

Cal Civ. Code §§ 1709-1710 and the common law of all states

(on behalf of the Nationwide Class and the California Subclass)

275. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

276. Plaintiff brings this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710 *et seq.*, Massachusetts law, and the common law of all states. The elements of fraud by omission are substantially similar from state to state, thus making nationwide class certification appropriate.

277. Defendant omitted material facts, in whole or in part, with the intent to induce Plaintiff and the members of the Class, Subclass members, and other U.S. consumers to purchase the Products and pay premium prices. Specifically, Defendant failed to provide an "Artificially Flavored" disclosure on the front label of the Products as is required by California law, the laws of other states, and federal regulations.

278. Defendant was under a legal obligation to disclose this fact on Product labels.

279. Plaintiff, the Class, Subclass members, and other U.S. consumers were

unaware of this omitted material fact and would not have purchased the Products or would not have purchased the Products at the prices paid if they had known of the omitted fact.

280.    Plaintiff, the Class, Subclass members, and other U.S. consumers suffered injuries that were proximately caused by Defendant's omissions of material facts.

281.    Defendant's omissions were a substantial factor in causing the harm suffered by Plaintiff, the Class, the Subclass members, and other U.S. consumers as they would not have purchased the Products at all, or at the prices paid, if Defendant had disclosed the material fact that the Products were artificially flavored.

282.    As a result, Plaintiff, the Class, the Subclass, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## NINTH CAUSE OF ACTION:
## Fraud in the Inducement

MGL 93A; Cal Civ. Code §§ 1709-1710; and all similar state laws

(Nationwide and Multi-State Subclasses and California Subclass)

283.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

284.    Defendant intentionally failed to label the Products lawfully and to disclose to consumers that the Products contain artificial flavors; such disclosures are and were legally-required under federal and state law.

285.    Defendant labeled the Products as if the Products were free of artificial flavors although Defendant knew that the Products contain the artificial flavoring ingredient dl-malic acid that functioned as a flavoring in the Products.

286.    Defendant represented to Plaintiff and the Class via the Product labeling that the Products contained no artificial flavors and that the Products therefore were flavored solely with natural flavors.

287.    These representations were false; the Products contain artificial flavoring.

288.    The false representations and omissions were seen by Plaintiff and by all

35

Class members.

289.   These representations and omissions were material to Plaintiff's and Class members' decisions to purchase the Products.

290.   Plaintiff and Class members reasonably relied on those representations in purchasing the Products.

291.   Plaintiff's and the Class's reliance on Defendant's misrepresentations were a substantial factor in causing their harm.

292.   Plaintiff and the Class purchased the Products based on those false representations and omissions.

293.   As a sophisticated manufacturer of foods and beverages, Defendant knew that those representations were false.

294.   Defendant willfully deceived Plaintiff and the Class by failing to disclose the fact that the Products were artificially flavored and labeling the Products as if they were solely naturally flavored.

295.   Defendant knew that the presence or absence of artificial flavoring is important to American consumers and concealed the fact the Products contained an artificial flavor and represented the Products as solely naturally flavored.

296.   As a sophisticated manufacturer, Defendant knew that whether a beverage contains artificial flavoring is a material fact to American consumers which influences which beverages they purchase and how much they are willing to pay.

297.   Defendant intended that Plaintiff and other consumers would rely on these false representations when deciding to purchase the Products rather than those of competing beverage manufacturers.

298.   Defendant intended that this deceit would influence consumer purchasing decisions to the detriment of those purchasing the Products.

299.   Defendant's unlawful affirmative representations and fraudulent omissions induced Plaintiff and the Class to purchase the Products at the listed retail prices.

300.   Plaintiff and the Class were financially harmed when they purchased the

Products or paid more for the beverages than they would have paid had Defendant disclosed the presence of artificial flavoring as was legally required.

301.    Because Plaintiff and the Class were fraudulently induced to provide monies in exchange for the misbranded and misrepresented Products, Plaintiff and Class members were injured financially.

## VIII.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated in California, in Massachusetts, and all others similarly situated in the U.S., prays for judgment against Defendant as follows:

A.    An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiff and their undersigned counsel to represent the Class and the Subclasses, and requiring Defendant to bear the cost of class notice;

B.    An order declaring that the conduct complained of herein violates the California CLRA;

C.    An order declaring that the conduct complained of herein violates the California UCL;

D.    An order declaring that the conduct complained of herein violates the California FAL;

E.    An order declaring that the conduct complained of herein violates the Massachusetts General Laws and warrants treble damages;

F.    An order declaring that the conduct complained of herein violates corresponding consumer protection laws in states other than California, including the states included in the multi-state Subclasses;

G.    An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H.    An order declaring that the conduct complained of herein constituted fraud in the inducement;

I.      An order requiring Defendant to disgorge any benefits received from Plaintiff and the Class and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

J.      An order requiring Defendant to pay restitution and damages to Plaintiff and Class members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable or negligent acts;

K.      An award to Plaintiff and the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

L.      An award of punitive damages in an amount to be proven at trial;

M.      An order enjoining Defendant's deceptive and unfair practices;

N.      An order requiring Defendant to conduct corrective advertising;

O.      An award of pre-judgment and post-judgment interest;

P.      An award of attorney fees and costs; and

Q.      Such other and further relief as this Court may deem just, equitable, or proper.

## IX.   <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all claims for damages. Plaintiff does not seek a jury trial for claims sounding in equity.

Respectfully Submitted,

DATED:  October 29, 2024                GLANCY PRONGAY & MURRAY LLP

                                        By:  */s/ Marc S. Godino*
                                        Kevin F. Ruf
                                        Marc L. Godino
                                        1925 Century Park East, Suite 2100
                                        Los Angeles, California 90067
                                        Telephone:  (310) 201-9150
                                        Facsimile:  (310) 201-9160
                                        Email:  info@glancylaw.com

                                        *Attorneys for Plaintiff and the Proposed Class and Subclass*

38